MARTIN A. MUCKLEROY, ESQ.
Nevada Bar No. 9634
COOKSEY, TOOLEN, GAGE, DUFFY & WOOG
A Professional Corporation
3930 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
Telephone: (702) 949-3100
Facsimile:  (702) 949-3104

*Attorneys for Plaintiff Carlos Beata*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ELLIOT GREENBERG, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br>     v.<br><br>A-POWER ENERGY GENERATION SYSTEMS, LTD., JINXIANG LU and KIN KWONG MAK,<br><br>            Defendants. | Civil Action No. 3:11-cv-00472-RCJ |
| RAJNISH GUPTA, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br>     v.<br><br>A-POWER ENERGY GENERATION SYSTEMS, LTD., JINXIANG LU and KIN KWONG MAK,<br><br>            Defendants. | Civil Action No. 3:11-cv-00577-RCJ |

**MEMORANDUM OF LAW IN SUPPORT OF CARLOS BAETA'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND <u>APPROVAL OF THE FARUQI FIRM AS LEAD COUNSEL</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.  PRELIMINARY STATEMENT ................................................................................ 1

II. FACTUAL BACKGROUND ..................................................................................... 3

III. ARGUMENT ............................................................................................................... 4

    A.  THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES .................... 4

    B.  BAETA SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS ................ 6

        1.  The PSLRA's Provisions Concerning The Appointment Of A Lead Plaintiff ......... 6

        2.  Under The PSLRA, Baeta Should Be Appointed Lead Plaintiff ............................. 7

            a.  Baeta Filed a Timely Motion ........................................................................... 7

            b.  Baeta Has the Largest Financial Interest in the Relief Sought By the Class .. 8

            c.  Baeta Meets Rule 23's Typicality and Adequacy Requirements ..................... 9

    C.  THE COURT SHOULD APPROVE BAETA'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL ................................................................................................ 11

IV. CONCLUSION ......................................................................................................... 11

- i -

**MEMORANDUM OF LAW IN SUPPORT OF CARLOS BAETA'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF THE FARUQI FIRM AS LEAD COUNSEL**

# TABLE OF AUTHORITIES

**Cases**                                                               Page(s)

*Andrade v. Am. Apparel, Inc.*,
    No. 10-06352, 2011 U.S. Dist. LEXIS 79795 (C.D. Cal. Mar. 15, 2011) .................................. 5, 6

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ................................................................................................ 6, 9, 10

*Greebel v FTP Software, Inc.*,
    939 F. Supp. 57 (D. Mass. 1996) ..................................................................................................... 7

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ......................................................................................................... 9

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ........................................................................................................... 9

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
    No. 07-2245, 2008 U.S. Dist. LEXIS 43615 (S.D. Cal. May 22, 2008) ........................................ 5

*Hufnagle v. Rino Int'l Corp.*,
    No. 10-8695, 2011 U.S. Dist. LEXIS 19771 (C.D. Cal. Feb. 14, 2011) .................................... 5, 7

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990),
    *cert. denied*, 498 U.S. 920 (1990) ................................................................................................. 5

*Lax v. First Merchants Acceptance Corp.*,
    No. 97-2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ........................................... 7

*Local Joint Executive Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ...................................................................................................... 10

*In re MGM Mirage Secs. Litig.*,
    No. 09-01558, 2010 U.S. Dist. LEXIS 120061 (D. Nev. Oct. 25, 2010) ........................ 6, 7, 9, 10

*In re Nice Sys., Ltd. Sec. Litig.*,
    188 F.R.D. 206 (D.N.J. 1999) ......................................................................................................... 7

*Perlmutter v. Intuitive Surgical, Inc.*,
    No. 10-03451, 2011 U.S. Dist. LEXIS 16813 (N.D. Cal. Feb. 15, 2011) ...................................... 8

*Ruland v. Infosonics Corp.*,
    No. 06-1231, 2006 U.S. Dist. LEXIS 79144 (S.D. Cal. Oct. 23, 2006) ......................................... 8

*Schriver v. Impac Mortg. Holdings, Inc.*,
    No. 06-0031, 2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 1, 2006) .................................... 5, 11

*Siegall v. Tibco Software, Inc.*,
    No. 05-2146, 2006 U.S. Dist. LEXIS 26780 (N.D. Cal. Feb. 24, 2006) ...................................... 10

*Stocke v. Shuffle Master, Inc.*,
    No. 07-00715, 2007 U.S. Dist. LEXIS 91535 (D. Nev. Nov. 29, 2007) ................................. 9, 10

- ii -

**MEMORANDUM OF LAW IN SUPPORT OF CARLOS BAETA'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF THE FARUQI FIRM AS LEAD COUNSEL**

Page(s)

**Statutes, Rules & Regulations**

15 U.S.C.,
   § 78u-4(a)(1) .................................................................................................................... 6
   § 78u-4(a)(3)(A)(i) ........................................................................................................... 7
   § 78u-4(a)(3)(A)(i)(II) ...................................................................................................... 6
   § 78u-4(a)(3)(B) ........................................................................................................... 1, 9
   § 78u-4(a)(3)(B)(i) ........................................................................................................... 6
   § 78u-4(a)(3)(B)(I) ........................................................................................................... 6
   § 78u-4(a)(3)(B)(ii) ....................................................................................................... 1, 4
   § 78u-4(a)(3)(B)(iii) ......................................................................................................... 2
   § 78u-4(a)(3)(B)(iii)(I) ..................................................................................................... 6
   § 78u-4(a)(3)(B)(iii)(I)(bb) .............................................................................................. 8
   § 78u-4(a)(3)(B)(iii)(II) ................................................................................................... 7
   § 78u-4(a)(3)(B)(v) ..................................................................................................... 2, 11

Federal Rules of Civil Procedure,
   Rule 23 ............................................................................................................... 2, 7, 9, 10
   Rule 23(a) ........................................................................................................................ 9
   Rule 23(a)(4) ................................................................................................................. 10
   Rule 42(a) ........................................................................................................................ 2

Private Securities Litigation Reform Act of 1995,
   § 21D(a)(3)(B) ................................................................................................................ 1

Securities and Exchange Act of 1934,
   § 10(b) .......................................................................................................................... 1, 2
   § 20(a) .......................................................................................................................... 1, 2
   § 21D(a)(2) ...................................................................................................................... 7

Securities Exchange Commission,
   Rule 10b-5 ....................................................................................................................... 1

**Secondary Authorities**

*Business Wire,*
   July 2, 2011 ..................................................................................................................... 7

*Seeking Alpha* ...................................................................................................................... 3

- iii -

**MEMORANDUM OF LAW IN SUPPORT OF CARLOS BAETA'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF THE FARUQI FIRM AS LEAD COUNSEL**

Movant Carlos Baeta ("Baeta"), on behalf of himself and the Class defined herein, respectfully submits this memorandum of law pursuant to Section 21D(a)(3)(B) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), in support of his motion for the entry of an order:  (1) consolidating the Actions (defined below) and any related actions that may be filed; (2) appointing Baeta as Lead Plaintiff for the Actions; and (3) approving Baeta's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.

## I. PRELIMINARY STATEMENT

Presently pending in this District are two securities class actions (the "Actions")[1] brought on behalf of a putative class (the "Class") of investors who suffered damages as a result of their transactions in A-Power Energy Generation Systems, Ltd. ("A-Power" or the "Company") securities during the period from August 27, 2009 through and including June 27, 2011 (the "Class Period").[2]  In connection therewith, various movants seek to consolidate all related actions, to be appointed lead plaintiff, and to approve their respective selections of counsel.

As an initial matter, the Court must decide whether to consolidate the Actions.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii).  On this threshold question, little doubt exists.  The Actions allege violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 ("Exchange Act") and Securities Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.  The

---

[1] The Actions are as follows:  (1) *Greenberg v. A-Power Energy Generation Systems, Ltd., et al.*, No. 3:11 Civ. 00472 (RCJ); and (2) *Gupta v. A-Power Energy Generation Systems, Ltd., et al.*, No. 3:11 Civ. 00577 (RCJ).  Two additional securities class actions are pending against substantially the same defendants in the United States District Court for the Central District of California:  (1) *Cheng v. A-Power Energy Generation Systems, Ltd., et al.*, No. 2:11 Civ. 05509 (GHW); and (2) *Arar v. A-Power Energy Generation Systems, Ltd., et al.*, No. 2:11 Civ. 05649 (VBF) (collectively, the "California Actions").  In addition, one action was filed in the United States District Court for the Southern District of New York:  *Weinberg v. A-Power Energy Generation Systems, Ltd., et al.*, No. 1:11-cv-06006 (JSR).

[2] While the proposed class period in the Actions runs from August 27, 2009 through and including June 27, 2011, the proposed class period in the California Actions runs between March 31, 2008 and June 27, 2011, inclusive.  In addition, minor differences exist in the class definitions in the California Actions.  For example, the *Arar* action purports to represent a "Class of all persons who purchased or acquired A-Power ***securities*** during the Class Period," while the proposed *Cheng* class consists of all persons who purchased A-Power ***common stock*** during the Class Period.

Actions allege substantially the same misconduct by A-Power and two of the Company's officers (Chief Executive Officer and Chairman of the Board Jinxiang Lu and former Chief Financial Officer Kin Kwong Mak).[3]  Because the Actions raise common issues of fact and law, and consolidation will be more efficient for the Court and the parties, the Actions should be consolidated under Federal Rule of Civil Procedure 42(a).

With respect to the appointment of a lead plaintiff, Congress established a presumption in the PSLRA that requires the Court to appoint as lead plaintiff the "person or group of persons" who demonstrate the "largest financial interest in the litigation" and who also satisfies Rule 23's typicality and adequacy requirements for class representatives.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

With total losses of $203,950.00, Baeta, to the best of counsels' knowledge, has the largest financial interest in the litigation of any movant.  Baeta also satisfies Rule 23's typicality and adequacy requirements.  Baeta's claims are typical of the Class's claims because he suffered losses in his A-Power investments as a result of the defendants' false and misleading statements.  Further, Baeta has no conflict with the Class and will adequately protect the Class's interests given Baeta's significant stake in the litigation and his conduct to date in prosecuting the litigation, including his submission of the requisite certification and selection of experienced class counsel.  Accordingly, Baeta is the presumptive Lead Plaintiff.

Lastly, if appointed Lead Plaintiff, Baeta is entitled to select, subject to the Court's approval, lead counsel to represent the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Baeta has engaged the Faruqi Firm for this purpose.  The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced plaintiffs' firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, Baeta's motion should be granted in its entirety.

---

[3] The California Actions allege substantially the same misconduct against certain additional Company officers and/or executives, including former interim Chief Financial Officer John S. Lin, former Chief Financial Officer Edward Meng and Vice President for Strategic Planning and interim Chief Financial Officer as of July 15, 2011 Michael Zhang.  The *Cheng* action also asserts violations of Sections 10(b) and 20(a) against the Company's Board of Directors:  Robert B. Leckie, Dilip Limaye, Remo Richli, Zhenyu Fan and Jiamin Wu.

**MEMORANDUM OF LAW IN SUPPORT OF CARLOS BAETA'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF THE FARUQI FIRM AS LEAD COUNSEL**

## II. FACTUAL BACKGROUND

A-Power is engaged in providing onsite distributed power generation systems and micro power grids for industrial companies.  It is engaged in the design, construction, installation and testing of integrated distributed power generation systems and micro power grids as stand-alone facilities, primarily in the People's Republic of China and Southeast Asia for various customers in the steel, chemical, ethanol, cement and food industries.

During the Class Period, defendants issued materially false and misleading statements regarding the Company's financials and business prospects.  Specifically, the defendants made false and/or misleading statements and/or failed to disclose that:  (1) the Company improperly accounted for its related-party transactions such that its financial statements were presented in violation of Generally Accepted Accounting Principles ("GAAP"); (2) the Company's revenues and income in its filings with the SEC were overstated in violation of GAAP, as the Company reported materially lower revenue and net income in its filings with the Chinese State Administration for Industry and Commerce ("SAIC"); (3) the Company lacked adequate internal and financial controls; and (4) as a result of the foregoing, the Company's financial results were materially false and misleading at all relevant times.

On June 17, 2011, A-Power issued a press release announcing that a member of the Board of Directors, Robert G. Leckie, had resigned from the Company's Board "as a result of concerns that his views on process and best practices were not necessarily shared throughout the Company." Later in the day, *Seeking Alpha* published an article raising the specter of fraud at the Company, including allegations that the 2009 financial statements filed by A-Power with the SAIC showed less than one-tenth of the revenue and cash balances than reported in statements filed with the SEC. On this news, A-Power stock fell $0.51 per share, or more than 22% in two consecutive trading sessions, to close at $1.74 per share on June 20, 2011.

On June 27, 2011, A-Power announced that its independent auditor, MSCM LLP ("MSCM") had resigned, stating that MSCM's resignation centered on the Company's non-retention of a qualified independent forensic accounting firm to evaluate "certain business

- 3 -

transactions that MSCM stated was necessary for MSCM to complete its audit of the Company's financial statements for the year ended December 31, 2010 on a timely basis." Moreover, the Company acknowledged that it would be delayed in filing its Form 20-F, the analog to a Form 10-K for foreign registrants, for the fiscal year ending December 31, 2010, due in part to MSCM's resignation.

After the market closed on June 27, 2011, NASDAQ halted trading of A-Power stock at $1.67 per share due to the resignation of the Company's auditor, which forced the delay of the Company's annual report. On June 28, 2011, the Company announced that Remo Richli and Dilip Limaye, the Chairs of A-Power's Board of Directors' audit and compensation committees, had resigned effective June 27, 2011. On July 1, 2011, the Company announced that another independent director, Jianmin Wu, had resigned from the Company's Board.

As a result of defendants' false and misleading statements and omissions, A-Power's common stock traded at inflated levels during the Class Period. After the above revelations seeped into the market, the Company's shares were hammered by massive sales that sent A-Power's stock price down nearly 92% from its Class Period high. The Actions are the only chance Class members will have to receive compensation for being defrauded, and Baeta seeks to ensure that investors receive the maximum possible recovery.

More recently, on August 18, 2011, A-Power disclosed that the SEC had served the Company with a subpoena and had launched an investigation into whether the Company or any of its employees have violated federal securities laws. Finally, A-Power's shares remain halted and are not actively traded on any domestic exchange.

### III. ARGUMENT

**A.    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES**

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not determine the most adequate plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). *See also* 15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA

- 4 -

advises courts to make the decision regarding the appointment of the lead plaintiff for the consolidated action "as soon as practicable after [the consolidation] decision is rendered").

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See* Fed. R. Civ. P. 42(a); *Andrade v. Am. Apparel, Inc.*, No. 10-06352, 2011 U.S. Dist. LEXIS 79795, at *10-11 (C.D. Cal. Mar. 15, 2011); *Schriver v. Impac Mortg. Holdings, Inc.*, No. 06-0031, 2006 U.S. Dist. LEXIS 40607, at *4-5 (C.D. Cal. May 1, 2006) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990), *cert. denied*, 498 U.S. 920 (1990)); *see also HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, No. 07-2245, 2008 U.S. Dist. LEXIS 43615, at *4-5 (S.D. Cal. May 22, 2008) (consolidating securities class actions). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See Andrade*, 2011 U.S. Dist. LEXIS 79795, at *11 (citing cases noting slight differences in class periods, parties, or damages among the suits does not necessarily defeat consolidation where the essential claims and factual allegations are similar); *HCL Partners Ltd. P'ship*, 2008 U.S. Dist. LEXIS 43615, at *3-4 n.2 (consolidating securities class actions with differing class periods).

The Actions at issue here clearly involve common questions of fact *and* law. The Actions assert claims under the Exchange Act on behalf of investors who were defrauded by A-Power and Company's officers. The Actions allege substantially the same wrongdoing, namely that the defendants issued materially false and misleading statements and omissions that artificially inflated A-Power's stock price and damaged the Class when the truth emerged and A-Power's stock price crashed. Consolidation of the Actions is therefore appropriate. *See Hufnagle v. Rino Int'l Corp.*, No. 10-8695, 2011 U.S. Dist. LEXIS 19771, at *6-7 (C.D. Cal. Feb. 14, 2011) (noting that consolidation is particularly appropriate in the context of securities class actions when multiple cases allege the same misrepresentations and omissions by defendants and have similar class definitions) (citations omitted).

- 5 -

**MEMORANDUM OF LAW IN SUPPORT OF CARLOS BAETA'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF THE FARUQI FIRM AS LEAD COUNSEL**

**B.     BAETA SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS**

**1.     The PSLRA's Provisions Concerning The Appointment Of A Lead Plaintiff**

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1) & (a)(3)(B)(I). In the Ninth Circuit, *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002) establishes a three-step process for selecting a lead plaintiff. Step one provides that within 20 days of the filing of the action, plaintiffs are required to publish a notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff. *See id.* at 729; *see also In re MGM Mirage Secs. Litig.*, No. 09-01558, 2010 U.S. Dist. LEXIS 120061, at *5 (D. Nev. Oct. 25, 2010) (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)(II)).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members." Thus, step two involves establishing a rebuttable presumption that the "most adequate plaintiff" is the person or group of persons that:

> (aa)   has either filed the complaint or made a motion in response to a notice (published by a complainant);
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re MGM Mirage*, 2010 U.S. Dist. LEXIS 120061, at *5-9 (describing the PSLRA's three-step competitive process for determining the "most adequate plaintiff"); *Andrade*, 2011 U.S. Dist. LEXIS 79795, at *13 (same).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, step three allows for the presumption to be rebutted upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of

- 6 -

adequately representing the class." *Hufnagle*, 2011 U.S. Dist. LEXIS 19771, at *9 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)); *see also In re MGM Mirage*, 2010 U.S. Dist. LEXIS 120061, at *8-9.

### 2. Under The PSLRA, Baeta Should Be Appointed Lead Plaintiff

As discussed below, Baeta should be appointed Lead Plaintiff because all of the PSLRA's procedural hurdles have been satisfied, Baeta holds the largest financial interest of any movant, and Baeta otherwise satisfies Rule 23's typicality and adequacy requirements.

#### a. Baeta Filed a Timely Motion

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a securities class action complaint was required to publish notice of the complaint within twenty (20) days of its filing. Counsel for Rick Cheng, the first-filed action in the California Actions, published notice of the lead plaintiff deadline via *Business Wire* on July 2, 2011.[4] *See* Muckleroy Decl., Ex. A.[5] Consequently, any member of the proposed Class in the Actions was required to seek to be appointed lead plaintiff within 60 days after publication of the notice (*i.e.*, on or before August 30, 2011). *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Thus, Baeta's motion was timely filed. Additionally, pursuant to Section § 21D(a)(2) of the Exchange Act, Baeta timely signed and submitted a certification with his motion, identifying all of his relevant A-Power trades during the Class Period, and detailing Baeta's suitability to serve as lead plaintiff in this case. *See* Muckleroy Decl., Ex. B. The PSLRA's procedural requirements have therefore been met.

---

[4] Publication by *Business Wire* is an adequate means for meeting the statutory requirement that notice be published "in a widely circulated business-oriented publication or wire service." *See In re Nice Sys., Ltd. Sec. Litig.*, 188 F.R.D. 206, 215 (D.N.J. 1999); *Greebel v FTP Software, Inc.*, 939 F. Supp. 57, 62 (D. Mass. 1996); *Lax v. First Merchants Acceptance Corp.*, No. 97-2715, 1997 U.S. Dist. LEXIS 11866, at *6 (N.D. Ill. Aug. 6, 1997).

[5] All references to Exhibits are references to the exhibits annexed to the Declaration of Martin Muckleroy, dated August 30, 2011, filed in support hereof.

### b. Baeta Has the Largest Financial Interest in the Relief Sought By the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Although both the PSLRA and the Ninth Circuit are silent as to any definitive methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit have often looked to four factors in the inquiry: (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant. *See Perlmutter v. Intuitive Surgical, Inc.*, No. 10-03451, 2011 U.S. Dist. LEXIS 16813, at *24-25 (N.D. Cal. Feb. 15, 2011) (citations omitted); *Ruland v. Infosonics Corp.*, No. 06-1231, 2006 U.S. Dist. LEXIS 79144, at *11 (S.D. Cal. Oct. 23, 2006) (citations omitted). Courts have placed the most emphasis on the last of the four factors: the approximate loss suffered by the movant. *Perlmutter*, 2011 U.S. Dist. LEXIS 16813, at *25 (citations omitted).

Overall, Baeta purchased 62,000 shares of A-Power common stock during the Class Period, and suffered losses of $203,950.00 when calculated using either a first in, first out ("FIFO") or last in, first out ("LIFO") methodology,[6] with the same amount in net expenditures.[7] *See* Muckleroy Decl., Exs. C, D and E. Baeta is presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

---

[6] Courts have employed both the FIFO and LIFO methods for calculating a potential lead plaintiff's financial interest. *See Perlmutter*, 2011 U.S. Dist. LEXIS 16813, at *25. These calculations are solely for purposes of this motion and are not meant to represent the amount of, or method of calculation of, damages that plaintiff may present at trial.

[7] For purposes of this analysis, counsel for Baeta has assigned a $0.00 value to Baeta's shares as of the August 30, 2011 because trading in A-Power's shares has been halted, and the common stock is not actively traded on any domestic exchange.

- 8 -

### c. Baeta Meets Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, the PSLRA also requires that the lead plaintiff satisfy Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B). Rule 23(a) allows members of the Class to sue as representative parties on behalf of the Class provided that: (1) the Class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the Class; (3) the claims of the representative party are typical of the claims of the Class; and (4) the representative party will fairly and adequately protect the interests of the Class.

Of the four prerequisites to class certification, only Rule 23's typicality and adequacy requirements are relevant when assessing class representatives in the context of appointing a lead plaintiff. *See, e.g.*, *In re Cavanaugh*, 306 F.3d at 730; *see also In re MGM Mirage*, 2010 U.S. Dist. LEXIS 120061, at *7 ("Factors (3) and (4) – typicality and adequacy, respectively – are the factors relevant to selecting the lead plaintiff."); *Stocke v. Shuffle Master, Inc.*, No. 07-00715, 2007 U.S. Dist. LEXIS 91535, at *7 (D. Nev. Nov. 29, 2007) ("Particularly, to be appointed lead plaintiff, a party must show that it satisfies the requirements of typicality and adequacy of representation … .").

The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Under [Rule 23's] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *see also In re MGM Mirage*, 2010 U.S. Dist. LEXIS 120061, at *7 ("The lead plaintiff's claims need not, however, be identical, or even substantially identical, to the claims of the class in order to satisfy typicality.") (internal citations omitted).

Baeta's claims are clearly typical of the Class's claims. Baeta purchased A-Power common stock during the Class Period, suffered damages as a result of the Company's false and misleading statements, and possesses claims against A-Power and its officers and/or directors under the federal

- 9 -

**MEMORANDUM OF LAW IN SUPPORT OF CARLOS BAETA'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF THE FARUQI FIRM AS LEAD COUNSEL**

securities laws.  Because the factual and legal bases of Baeta's claims are similar, if not identical, to those of the Class's claims, Baeta necessarily satisfies the typicality requirement.  *See Stocke v. Shuffle Master, Inc.*, No. 07-00715, 2007 U.S. Dist. LEXIS 91535, at *8 (putative lead plaintiffs' claims typical where they "relied on [defendants material] misstatements when they purchased [defendant] stock.").

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the Class."  The test for adequacy in the Ninth Circuit is: "(1) whether the interests of the class representatives coincide with those of the class, and (2) whether the class representative has the ability to prosecute the action vigorously."  *In re MGM Mirage*, 2010 U.S. Dist. LEXIS 120061, at *8 (citing *Stocke*, 2007 U.S. Dist. LEXIS 91535, at *8-9); *see also Local Joint Executive Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (holding that a determination of adequate representation depends on the qualifications of counsel, and the unlikelihood that the suit is collusive).

As evidenced by the representations in Baeta's certifications, his interests are perfectly aligned with -- and by no means antagonistic to -- the Class.  *See In re Cavanaugh*, 306 F.3d at 730 ("At step two of the process, when the district court makes its initial [Rule 23] determination, it must rely on the presumptive lead plaintiff's complaint and sworn certification; there is no adversary process to test the substance of those claims.") (internal citation omitted); *Siegall v. Tibco Software, Inc.*, No. 05-2146, 2006 U.S. Dist. LEXIS 26780, at *16 (N.D. Cal. Feb. 24, 2006) (movant's certification evidenced adequacy to serve as lead plaintiff).  Moreover, Baeta has selected and retained highly competent counsel to litigate the claims on behalf of himself and the Class.  As explained below in Section III, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation.  *See*  Muckleroy Decl., Ex. F.  Consequently, Baeta is more than adequate to represent the Class and has every incentive to maximize the Class's recovery.

In light of the foregoing, Baeta respectfully submits that he is the presumptive Lead Plaintiff and should be appointed Lead Plaintiff for the consolidated Actions.

### C. THE COURT SHOULD APPROVE BAETA'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff is entitled to select and retain lead counsel for the Class, subject to the Court's approval. Baeta has selected the Faruqi Firm to be Lead Counsel for the Class. As reflected in the firm's resume, the Faruqi Firm possesses extensive experience litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Muckleroy Decl., Ex. F. Accordingly, the Faruqi Firm is well qualified to represent the Class, and Baeta requests that the Court approve his selection of the Faruqi Firm as Lead Counsel for the putative class. *See Schriver*, 2006 U.S. Dist. LEXIS 40607, at *35-36.

### IV. CONCLUSION

For the foregoing reasons, Baeta respectfully requests that the Court: (1) consolidate the Actions and any related actions that may be filed; (2) appoint Baeta as Lead Plaintiff for the consolidated Actions; (3) approve Baeta's selection of the Faruqi Firm as Lead Counsel for the Class; and (4) grant such other relief as the Court may deem just and proper.

Dated: August 30, 2011

**COOKSEY, TOOLEN, GAGE, DUFFY & WOOG**

By:  /s/ Martin A. Muckleroy

MARTIN A. MUCKLEROY, ESQ.
Nevada Bar No. 9634
A Professional Corporation
3930 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
Tel.:  (702) 949-3100
Fax:   (702) 949-3104
mmuckleroy@cookseylaw.com

**FARUQI & FARUQI, LLP**
Antonio Vozzolo
Richard W. Gonnello
Francis P. McConville
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
avozzolo@faruqilaw.com

- 11 -

**MEMORANDUM OF LAW IN SUPPORT OF CARLOS BAETA'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF THE FARUQI FIRM AS LEAD COUNSEL**

and

Jacob A. Goldberg
Sandra G. Smith
101 Greenwood Avenue, Suite 600
Jenkintown, PA  19046
Tel: 215-277-5770
Fax: 215-277-5771
jgoldberg@faruqilaw.com

*Attorneys for Plaintiff Carlos Baeta*